70 N.J. Super. 397 (1961)
175 A.2d 658
ANTONI KASPIROWITZ, PLAINTIFF-APPELLANT,
v.
SCHERING CORPORATION, A BODY CORPORATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1961.
Decided November 9, 1961.
*398 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. Albert L. Cohn argued the cause for appellant (Messrs. David & Albert L. Cohn, attorneys).
Mr. Charles P. De Yoe argued the cause for respondent (Messrs. Stalter, Doan & De Yoe, attorneys; Mr. De Yoe, of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiff appeals from a final judgment of the district court, entered on defendant's motion for dismissal at the close of plaintiff's case. R.R. 4:42-2(b). Plaintiff claims damages from defendant Schering Corporation (hereinafter Schering) for personal injuries allegedly sustained as the result of his use of "Sebizon," a pharmaceutical product manufactured by defendant for the treatment of dandruff. Plaintiff asserts that defendant: (a) was negligent in failing adequately to warn the public of dangers inherent in the use of "Sebizon"; (b) breached express warranties that "Sebizon" was safe to use; and (c) breached an implied warranty of merchantability.
*399 We consider plaintiff's proofs. He testified that, entering a pharmacy in March 1959, he "asked the druggist for something for" his (plaintiff's) "dandruff." The druggist suggested a shampoo, but upon plaintiff's inquiry "if he had something better," the druggist "went behind the counter and brought out" a "bottle" of "Sebizon." In response to plaintiff's request "for instructions" as to how the medication "should be used," the druggist read the directions printed on the bottle and informed plaintiff of the procedure there indicated.
The bottle, received in evidence, is made of plastic. The label appearing on the front thereof includes the following warning: "Caution: Federal law prohibits dispensing without prescription." Printed directly upon the plastic on the reverse side of the bottle are four numbered instructions for use entitled "Directions to the Patient." The fourth such direction is: "Repeat applications as directed by physician."
Plaintiff testified that before he made the purchase he saw the above mentioned inscription on the bottle label and because thereof made specific inquiry of the druggist with reference to the "prescription" requirement, to which the druggist replied "that was all right" and that plaintiff had "nothing to worry about * * *." In response to interrogation by his own counsel on direct examination, plaintiff stated that in making the purchase he relied on the aforesaid statement by the druggist. On cross-examination of plaintiff the following appears in the record:
"Q. Despite the fact that the bottle said it should not be dispensed without a prescription, you went ahead and applied it to your hair, did you not?
A. After the druggist's assurance to me it was all right."
Kaspirowitz testified that he applied the "Sebizon" to his scalp on the evening of March 19, 1959. The following night his scalp started "to itch" and he noticed an eruption on his forehead which he described as "pimples." He returned to the druggist the next morning, informed the *400 druggist of his condition, and asked him whether he should see a doctor; the druggist replied that "there was nothing to worry about" and gave him a "tube of cream" which he used without beneficial result. That evening his "head started to swell" and a liquid, "like pus," was emitted from the "pimples." He again returned to the druggist who suggested that he should go to a hospital clinic for examination. He did so and thereafter was treated by a dermatologist who testified on his behalf at the trial.
At the trial plaintiff testified that he suffered headaches, loss of hair, swelling of the face, head and eyes, and inflammation of the skin, all of which persisted for a substantial period and required extensive medical treatment. The dermatologist who treated plaintiff testified that he diagnosed plaintiff's condition as "contact dermatitis * * *, dermatitis venenata." He expressed the opinion that "with reasonable certainty" there was a "direct relationship," a "causal connection," between plaintiff's use of the "Sebizon lotion" and plaintiff's condition as observed by the doctor on examination.
The record before us reveals that plaintiff originally instituted his action on June 10, 1959, in the Superior Court for damages against the druggist as well as against Schering. The pretrial order, dated March 8, 1960, reveals that plaintiff based his action against the druggist on several grounds, including a claim that the latter "was negligent in selling" the product "to plaintiff without a doctor's prescription," and that the druggist was also obliged to respond to plaintiff on the basis of an "express or implied warranty that the product was fit for the purpose for which it was to be used." The record further reveals that plaintiff thereafter consummated a settlement of his claim against the defendant druggist and, by court order dated November 4, 1960, the suit against that defendant was, on motion of plaintiff's counsel, dismissed with prejudice and the action transferred to the district court, there to be prosecuted against defendant Schering only.
*401 As above stated, plaintiff initially claims that Schering was negligent in failing adequately to warn prospective purchasers that the use of "Sebizon" might have deleterious effects. Neither at trial nor here does plaintiff contend that defendant, in labeling the bottle as aforesaid, failed to comply with the mandate of the Federal Food and Drugs Act, 21 U.S.C.A. § 353(b)(1), but he contends that compliance with that act does not satisfy the common-law duty owing by defendant to the public.
Enlarging upon his claim that defendant breached its common-law duty, plaintiff stresses defendant's employment of the word "dispense" instead of the word "use" on the bottle label. He asserts that such choice of word constitutes an "inadequate and insufficient warning" to the public as to the possible danger in "Sebizon"; that the word "dispense" fails to inform purchasers of the product of the possible risk inherent in its "use." Specifically, he asserts that the word "dispense" is simply a warning to the vendor (in this case the druggist) and fails adequately to alert the purchaser (in this case himself) to possible danger in the product's use. He contends that it is "reasonably foreseeable" that the product "will be sold on the open market to an ultimate consumer without a prescription" despite the aforesaid label warning. From this premise he concludes that there is presented for resolution by the jury, and not by the court, the question whether defendant "met its duty to warn and caution" users of the product.
Such contention ignores the factual situation revealed by the record before us. Apart from plaintiff's criticism of the adequacy of the word "dispense" on the label, plaintiff concedes that he realized that defendant had stated categorically, through the medium of the label, that a physician's prescription was required. He was aware that the manufacturer intended that the product was not to be sold without a prescription. Plaintiff's contention, that notice that a purchaser should not obtain a product from a dispensing druggist without a prescription is an insufficient warning that the *402 purchaser should not use the product without a prescription, is devoid of merit. Plaintiff's argument, in reality, is that he has a cause of action against the manufacturer stemming from his use of the medication made possible by the druggist's defiance of the aforesaid federal act. Plaintiff admits that he was alerted by the cautionary label, his concern was aroused, his resultant inquiry of the druggist followed, and the latter's response furnished the assurance on which plaintiff relied in purchasing and using the product.
The instructions on the reverse side of the bottle, to which reference has heretofore been made, are not without significance in assessing the quality of plaintiff's case. Those instructions are captioned "Directions to the patient." The use of the word patient connotes that the user is to act under the guidance of a physician, and the fourth direction, to which reference has also heretofore been made, viz., "Repeat applications as directed by physician," conclusively shows the professional guidance required in the use of the product.
All of these warnings plaintiff ignored and elected to rest on the druggist's voiced opinion. It is clear that he later concluded that the druggist's advice was negligently given and sued him for damages. Our examination of the record demonstrates conclusively that the trial judge not only was justified in dismissing the action on the ground of plaintiff's failure to prove common-law negligence against the defendant Schering, but makes equally clear to us that plaintiff's own negligence proximately caused the injuries for which he now seeks damages.
We next consider plaintiff's claim to damages based on the asserted breach of alleged express and implied warranties. His contention that express warranties existed is based on statements contained in a printed leaflet (offered in evidence on plaintiff's case), describing the content of "Sebizon" and directions for its use. The leaflet was included in defendant's package in which the bottle was originally sent to the druggist. The druggist removed the bottle from the package while showing it to plaintiff and failed *403 to reinsert the bottle in the package and deliver it, so enclosed, to plaintiff on the completion of the purchase. Plaintiff did not see the aforesaid leaflet at the time of purchase and, as heretofore stated, relied solely on the druggist's representation. His counsel, however, suggests that plaintiff is entitled to judgment against defendant on the basis of a breach of an express warranty on the authority of Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960). We disagree.
It is uncontradicted in the case at bar that plaintiff placed his entire reliance on the aforesaid statement and representation of the druggist. In Henningsen the court recognized (at p. 371) that "any affirmation of fact relating to the goods is an express warranty if the natural tendency of the statement is to induce the buyer to make the purchase. R.S. 46:30-18." No such inducement by the defendant manufacturer in the case at bar motivated plaintiff's purchase and use of "Sebizon." Moreover, in Henningsen, reliance on an express warranty, allegedly breached, was not the basis of the decision (32 N.J., at p. 384). The court affirmed a judgment based on the verdict of a jury to which the cause had been "submitted * * * for determination solely on the issues of implied warranty of merchantability." (32 N.J., at p. 365.) The cited case affords plaintiff no support whatever for his alternative suggestion that he is entitled to a verdict against defendant on the theory of a breach of an express warranty.
Plaintiff's final contention, as above noted, is that a jury question was presented regarding defendant's alleged breach of an implied warranty of merchantability. Again reliance is placed on Henningsen, supra, once more without justification. The facts in the instant case bear not the slightest resemblance to those on which the Henningsen opinion was based. Here we have no evidence of the product's promotion through advertising to the public, a factor which casts doubt on the very existence of an implied warranty of merchantability running from the defendant to the plaintiff. *404 (Henningsen, supra, 32 N.J., at pp. 379, 384.) Moreover, in the instant case we are not dealing with a defective product on the sale of which a claim of breach of an implied warranty of merchantability must necessarily rest.
The judgment of the trial court is affirmed.